Nicholas DeVITO, Plaintiff–Appellant,

v.

CHICAGO PARK DISTRICT, Nancy Kaszak, Leonard Postregna, Leona Green and Eugene Sullivan, Defendants–Appellees.

No. 91–2092.

United States Court of Appeals, Seventh Circuit.

Argued April 17, 1992.

Decided Aug. 18, 1992.

Robert A. Wolf (argued), Oak Park, Ill., for plaintiff-appellant.

James D. Wascher, Nelson A. Brown, Jr. (argued), Chicago, Ill., for defendants-appellees.

Before POSNER and KANNE, Circuit Judges, and HARLINGTON WOOD, Jr., Senior Circuit Judge.

HARLINGTON WOOD, Jr., Senior Circuit Judge.

Nicholas DeVito, a longtime employee with the Chicago Park District, was formally discharged from his job after a pre-suspension hearing for allegedly misrepresenting his physical condition. Mr. DeVito appealed the discharge and requested a hearing. The Chicago Park District finally scheduled a hearing for Mr. DeVito approximately one year after he requested one. During this time, Mr. DeVito was suspended without pay. Prior to the Chicago Park District's scheduling Mr. DeVito a post-termination hearing, Mr. DeVito filed a one-count complaint in federal district court against the Appellees alleging that their actions of suspending him without pay pending discharge proceedings and their one-year delay in scheduling him a hearing on the discharge violated Mr. DeVito's right to procedural due process under the Fourteenth Amendment to the United States Constitution. The Appellees filed a motion to dismiss the complaint, and the district court converted this motion into a motion for summary judgment. Summary judgment was granted in favor of the Appellees. The district court found that an "administrative bottleneck" delayed Mr. DeVito's hearing, that the bottleneck did not give rise to a constitutional violation, that the one-year delay before Mr. DeVito received his hearing was not unconstitutional, and that Mr. DeVito had an adequate state-law remedy in the form of mandamus. Mr. DeVito appeals the district court's decision to this court. We affirm.

## BACKGROUND FACTS

Prior to instituting this case Nicholas DeVito worked as a heavy laborer for the Chicago Park District ("Park District"). There is no dispute that Mr. DeVito acquired a property interest in his job for the Park District. In his job Mr. DeVito was required to lift as much as 100 pounds at a time. After an on-the-job injury the Medical Director of the Park District certified Nicholas DeVito as available only for "light duty" work assignments. However, the Park District subsequently suspected Mr. DeVito of "malingering," misrepresenting his physical condition in order to get out of doing harder work. The Park District then sent an investigatory team to "observe" Mr. DeVito away from the workplace. At oral argument, Mr. DeVito's counsel stated that the investigatory team videotaped Mr. DeVito doing such tasks as walking, getting in and out of vehicles, dusting snow off his car, and carrying dry cleaning.

The Park District notified Mr. DeVito of a pre-suspension disciplinary hearing scheduled for May 15, 1989. The notification alleges that Mr. DeVito falsely stated the status of his medical condition and that he was receiving monies based on a claimed but nonexistent medical condition. Mr. DeVito was allowed to bring a representative of his choice to the hearing, but he was not allowed to present any witnesses in his own behalf. The Park District's Medical Director, Dr. Carolyn Lopez, also attended the hearing. Although she originally certified Mr. DeVito for light duty assignments based on personal contact with him, she concluded after observing Mr. DeVito in the videotapes that the physical activity he demonstrated in the videotapes was inconsistent with his claim that he could do only light duty as a laborer instead of heavy labor tasks. A letter dated June 14, 1989, mailed after the pre-suspension hearing indicates that Mr. DeVito was terminated for "just cause." Mr. DeVito timely appealed the decision on August 4, 1989, requesting a post-termination hearing.

In October of 1989 the Park District had not scheduled a hearing for Mr. DeVito. During this time Mr. DeVito was suspended without pay. Mr. DeVito's attorney contacted the Park District's counsel and again requested a hearing. By June 5,

1990, Mr. DeVito still had not received a hearing, and he was receiving no pay. Mr. DeVito filed a complaint in federal court against the Chicago Park District; Nancy Kaszak, the Park District's General Attorney; Leonard Postregna, Director of Operation Services of the Park District; Leona Green, the Park District's Superintendent of Employment; and Eugene Sullivan, the Park District's Superintendent (hereinafter referred to collectively as "Park District"). Mr. DeVito's complaint alleges the Park District violated the Due Process Clause of the Fourteenth Amendment by suspending him without pay pending discharge proceedings and by delaying his hearing regarding his termination for over one year.

By the time the Park District responded to Mr. DeVito's complaint, the Park District had scheduled Mr. DeVito's post-termination hearing for August 1, 1990.[1] The Park District filed a motion to strike and dismiss Mr. DeVito's complaint on July 5, 1990. This motion states that Mr. DeVito failed to state a claim for violation of the Due Process Clause of the Fourteenth Amendment because the length of time between his request for a hearing and the holding of the hearing was not great enough to rise to a constitutional violation. The motion also states that Mr. DeVito has adequate remedies in the state court system, and any claims for back wages and reinstatement would be more appropriately dealt with there. Finally the motion states that Mr. DeVito had not shown that Appellees Kaszak, Postregna and Green, who were sued in their professional capacities, acted in bad faith when they did not schedule the hearing Mr. DeVito sought. The motion states, consequently, Mr. DeVito failed to state a claim for relief against Kaszak, Postregna and Green.

The district court converted the Park District's motion to dismiss into a motion for summary judgment. The parties were given time to submit additional materials. The Park District submitted as an additional reason for its delay in granting Mr.

DeVito a post-termination hearing that there was an administrative backlog created by a "shakedown" process to implement a new and systematic discipline procedure. The Park District explained that there were only 67 disciplinary proceedings in 1987 while Nancy Kaszak, the Park District's General Attorney, projected the number of all disciplinary proceedings in 1990 to be 742. In spite of the great number of disciplinary proceedings, the Park District says the administrative structure and personnel currently in place can process disciplinary appeals in about three to six months. Because of the administrative backlog in 1988 and 1989, however, it took the Park District over a year to get to Mr. DeVito's hearing.

Mr. DeVito conducted discovery to respond to the Park District's allegations regarding the administrative bottleneck. Mr. DeVito's response contained evidence of several disciplined employees who requested hearings after he did but who received hearings well before he did, in about two or three months. Mr. DeVito argued this evidence tended to show that the administrative backlog did not exist. Mr. DeVito also submitted evidence that there was another disciplined employee like himself who was discharged and who at the time Mr. DeVito filed his complaint still had not received a hearing. Mr. DeVito submitted this evidence to show that employees other than himself had been ignored by the Park District. Mr. DeVito also submitted evidence concerning the Park District's procedure for scheduling hearings. A Park District employee, Dorothy Collins, scheduled hearings for the Park District. She processed requests for hearings on a first-in, first-out ("FIFO") basis. This meant that an employee who was disciplined by suspension (five-day or thirty-day) was treated in the same way as those employees who were discharged. Moreover, individuals who appealed suspensions were allowed to work while waiting for their hearings while those

**1.** At oral argument Mr. DeVito's counsel stated that Mr. DeVito's post-termination hearing resulted in his being reinstated, but Mr. DeVito was not cleared of the charges against him nor was he given backpay. Mr. DeVito's counsel stated Mr. DeVito is currently seeking to overturn the decision to deny him backpay in state court.

who were discharged were suspended without pay. There were a great many more suspension appeals than discharge appeals. Mr. DeVito alleged that the FIFO process necessarily resulted in an unreasonable delay in the scheduling of hearings for those individuals who were discharged. However, there was also evidence that some people managed to get around the process. Mr. DeVito argues that from the sum of this evidence it can be inferred that "someone" intentionally acted to delay Mr. DeVito's hearing.

The district court disagreed. The court first looked to the circumstances underlying the Park District's delay in granting Mr. DeVito's hearing. The district court concluded that Mr. DeVito's conflicting arguments as to whether the Park District's FIFO policy resulted in unreasonable delays in hearings being set or whether the administrative backlog existed in the first place defeated Mr. DeVito's argument that the Park District had a "policy and practice" of unreasonably delaying post-termination hearings. The district court stated Mr. DeVito's evidence showed either the Park District failed to give any of its employees a timely hearing or for some unknown reason the Park District purposefully delayed only Mr. DeVito's hearing. Therefore the court concluded evidence that some employees managed to get timely hearings meant there was no "policy and practice" of delaying hearings for everyone. The district court then turned to Mr. DeVito's claim that the Park District intentionally delayed only his hearing. The court found this claim wanting. The district court relied on the fact that Mr. DeVito offered only speculation for the theory that "someone" delayed his hearing, while the Park District explained the delay by pointing to the administrative bottleneck created by a revamping of the Park District's disciplinary rules and procedures and the fact that Mr. DeVito's case involved medical evidence, which was more complicated than most cases. The district court finally concluded that even if the Park District had intentionally delayed Mr. DeVito's hearing, his claim must fail because there was an adequate state remedy.

The district court stated Mr. DeVito could have brought a mandamus action to compel the Park District to comply with its own procedures. On these bases, the district court granted summary judgment in favor of the Park District.

## ANALYSIS

There is basically one issue in this case for our review—whether the Park District unreasonably and unconstitutionally delayed granting Mr. DeVito's post-termination hearing. It is undisputed that Mr. DeVito acquired a property interest in his Park District job, and it is also undisputed that he is entitled to protection of due process of law before he is ultimately deprived of his property interest by the Park District. Mr. DeVito received a pretermination hearing, and he was invited to bring a representative of his choice to that hearing. But, Mr. DeVito claims he was entitled to more than just a pre-termination hearing; he says he was also entitled to a prompt post-termination hearing in accordance with Park District regulations in order to adequately protect his property interest. The Park District delayed scheduling the hearing Mr. DeVito requested for over a year. The district court decided that the wait between Mr. DeVito's actual discharge and the post-termination hearing he eventually received was not so excessive as to be constitutionally unreasonable. On appeal the Park District adds that a one-year delay in scheduling a post-termination hearing is not unreasonable per se and the determination of whether the delay is improper necessarily begins with the circumstances of each case. *See Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972)).

Some form of hearing is required before an individual is finally deprived of a property interest. *Mathews*, 424 U.S. at 333, 96 S.Ct. at 902. The following three factors are to be considered in determining the specific dictates of due process in a given situation:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews,* 424 U.S. at 335, 96 S.Ct. at 903. Subsequent to *Mathews,* the Supreme Court decided *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). One issue raised in *Loudermill* was whether the administrative proceedings to which Loudermill was entitled took too long. The Court found that Loudermill's recital of the course of proceedings coupled with his conclusion that the lack of speedy resolution denied him due process did not state a claim of constitutional deprivation. The Court explained, "[A]t some point, a delay in the post-termination hearing would become a constitutional violation." *Loudermill,* 470 U.S. at 547, 105 S.Ct. at 1496. The Court in *Loudermill* did not, however, explain what that point was. There was more discussion of when delay in post-termination hearings is justified in *FDIC v. Mallen,* 486 U.S. 230, 108 S.Ct. 1780, 100 L.Ed.2d 265 (1988). The Court in *Mallen* rephrased the three factors comprising the *Mathews* balancing test as the determining factors in evaluating whether the delay in granting a post-suspension hearing is constitutional:

In determining how long a delay is justified in affording a post-suspension hearing and decision, it is important to examine the importance of the private interest and the harm to the interest occasioned by the delay; the justification offered by the government for the delay and its relation to the underlying governmental interest; and the likelihood that the interim decision may have been erroneous.

*Mallen,* 486 U.S. at 242, 108 S.Ct. at 1788. These cases guide our evaluation of the Park District's delay in granting a post-

termination hearing to Mr. DeVito in this case.

Mr. DeVito argues that his private interest in a prompt hearing was paramount. While he was waiting for his hearing Mr. DeVito received no income. The Park District forthrightly admits Mr. DeVito's interest in continued employment is a very important interest even though Mr. DeVito submitted no evidence to the trial court concerning his financial status. The Park District does not concede Mr. DeVito's interest was paramount. *See Mathews,* 424 U.S. at 342–43, 96 S.Ct. at 906–07 (explaining that potential hardship to families after termination of disability benefits when there is no pre-termination hearing is not presumptively foremost in applying the balancing test). We think that Mr. DeVito's interest was such that it "ought not be interrupted without substantial justification." *Mallen,* 486 U.S. at 243, 108 S.Ct. at 1789. The Park District's justification for delaying Mr. DeVito's hearing is the second factor of the balancing test explained in *Mallen.*

The trial court determined that the reasons for the delay in Mr. DeVito's hearing were "an administrative 'bottleneck' created by a revamping of the [Park] District's disciplinary rules and procedures, coupled with employee turnover in the department handling disciplinary cases and finally, the fact that Mr. DeVito's case, which involved medical evidence, was more complicated than most." Memorandum Opinion at 7. Mr. DeVito attacks the district court's conclusion in different directions. He first claims there was no administrative bottleneck, and to support his claim he lists several Park District employees who received hearings before he did even though these employees requested hearings after he did. This evidence shows, Mr. DeVito says, that if there was a backlog at the Park District it was only two to three months in duration, not a year. Mr. DeVito then claims this evidence when considered in light of the Park District's delay in granting his hearing raises the inference that "individuals at the Park District wanted to delay his hearing" since Mr. DeVito did not receive a hearing within two

to three months like some employees. Mr. DeVito's second argument is that if an administrative backlog existed at the Park District, it was caused by the Park District's "FIFO" practice—a practice Mr. DeVito claims was unconstitutional because it led to unreasonable delay in post-deprivation hearings. Mr. DeVito claims additionally that there were no administrative nor fiscal costs associated with giving those employees requesting post-discharge hearings priority over those employees requesting post-suspension hearings, so the Park District cannot now attempt to demonstrate that any interest is served by the FIFO practice. We will consider the Park District's excuse for the delay in granting Mr. DeVito's hearing in light of both of Mr. DeVito's claims.

First, we examine the Park District's justification for its tardiness in scheduling Mr. DeVito's hearing in light of Mr. DeVito's claim that there was no backlog and that someone at the Park District wanted to delay his hearing. At oral argument Mr. DeVito's counsel was asked whether any of the named defendants was considered responsible for delaying the hearing, and counsel responded in the negative. The only individual Mr. DeVito points to with direct responsibility for scheduling hearings is Dorothy Collins, a Personnel Specialist, and she is not a named defendant. Mr. DeVito does not assert that Ms. Collins was the person who deliberately delayed his hearing. Neither does Mr. DeVito claim that the other Park District employee he points to with actual knowledge of his case, Mary Turner, the staff attorney prosecuting his case, is responsible for delaying his hearing. We think, like the district court, that Mr. DeVito has not demonstrated any evidence beyond speculation that "someone" at the Park District intentionally delayed his hearing. Mr. DeVito's speculation does not stand up to the Park District's proffered justification for the delay in setting Mr. DeVito's hearing—that there was an administrative backlog.

We next examine Mr. DeVito's claim that if there was an administrative backlog that caused a year's delay in the setting of his hearing it was caused by the Park District's FIFO policy. For purposes of this appeal the Park District concedes that it had a "practice" of generally hearing appeals in the order in which they were filed. This means that the Park District generally did not give priority to a hearing for post-termination with respect to a hearing for post-suspension even though the employee to be terminated received no pay and the employee to be suspended was allowed to work until the hearing. The Park District claims, however, that this general practice was not a rigid rule. Mr. DeVito refers us to *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), which provides that a municipality can be held liable for constitutional violations if the plaintiff establishes that the violation was caused by the municipality's official custom, practice or policy. The district court decided Mr. DeVito destroyed his "policy and practice" argument at the outset by demonstrating there was no Park District policy of delaying hearings with evidence of employees who received hearings within two to three months of requesting one. We do not think Mr. DeVito has sufficiently demonstrated the Park District's admitted practice of scheduling hearings using the FIFO method is per se unconstitutional, as Mr. DeVito argues, because Mr. DeVito has not demonstrated the FIFO policy itself caused a violation of Mr. DeVito's constitutional rights by causing an unreasonable delay in his hearing. *Compare Kelly v. Railroad Retirement Board*, 625 F.2d 486 (3d Cir.1980) (Railroad Retirement Board violated applicant's due process rights by taking nearly four years to issue a final denial of application and by not supplying any valid reason for the delay). The Park District has already pointed to its administrative backlog as a reason for the delay in scheduling Mr. DeVito's hearing. Arguably, the FIFO practice might have contributed to the delay. That the practice may have contributed to the delay is not enough to pronounce it unconstitutional. If Mr. DeVito is to prevail on his claim that his due process rights were violated by the FIFO procedure, he must show the FIFO procedure resulted in a

denial of his rights in light of the *Mallen* balancing test. So, we look to the *Mallen* test's third factor: the risk of erroneous deprivation posed by the procedure used.

In accordance with the Park District's Personnel Policy Manual, Mr. DeVito was served a pre-suspension/discharge notice with a statement of the charges against him and the date of a pre-termination hearing. Mr. DeVito was also entitled to bring a representative of his choice to the hearing. After an employee receives a pre-suspension hearing, the Park District's Personnel Policy Manual indicates that if the employee is to be discharged he will be served with a termination notice and given the opportunity to appeal the decision. After he received a termination notice from the Park District, Mr. DeVito timely requested a hearing. The Park District's Personnel Policy Manual does not indicate, however, a specific time limit in which the post-termination hearing must be held.

The Supreme Court has stated that "where the State feasibly can provide a predeprivation hearing before taking property, it generally must do so regardless of the adequacy of a postdeprivation … remedy." *Zinermon v. Burch*, 494 U.S. 113, 132, 110 S.Ct. 975, 987, 108 L.Ed.2d 100 (1990). The Park District provided Mr. DeVito with a predeprivation hearing here; however, that it did so does not excuse the Park District's obligation to grant Mr. DeVito a prompt post-termination remedy. Moreover, that the Park District's Personnel Policy Manual does not specify a time limit in which a post-termination hearing must be held similarly does not excuse the Park District from unreasonable delays in granting such hearings. That the Park District provided Mr. DeVito a predeprivation hearing does affect, under the *Mallen* balancing test, whether the amount of time Mr. DeVito had to wait for his post-termination hearing was reasonable. This is because the likelihood that the interim decision may have been mistaken is lessened by the fact that Mr. DeVito was given a pre-termination hearing. *Compare Loudermill*, 470 U.S. at 547 n. 12, 105 S.Ct. at 1496 n. 12 ("the existence of post-termination procedures is relevant to the necessary scope of pre-termination procedures").

We must consider the FIFO practice in light of the Park District's entire discipline procedure before we can conclude that it is unconstitutional. The FIFO procedure may have contributed to the delay in Mr. DeVito's hearing in conjunction with the Park District's proffered justification that the delay was caused by an administrative bottleneck due to the revamping of disciplinary procedures. There is no evidence that the FIFO practice unreasonably prolonged the Park District's disciplinary procedures. In light of the protection against erroneous deprivation afforded by the pre-termination hearing Mr. DeVito received, we cannot say that the Park District's excuse for its delay is unacceptable. Therefore we do not believe that the Park District was constitutionally required to give post-discharge hearings priority over post-suspension hearings even if such prioritizing may appear to cost the Park District little while affording prompt resolution to the employee who receives no pay if his hearing is delayed.

We think that the balance of the three *Mallen* factors weighs in favor of the Park District. Accepting that Mr. DeVito's private interest in continued employment with the Park District is an important interest, we think the Park District provided protection to that interest by scheduling a pre-termination hearing. The record supports the Park District's assertion that an administrative bottleneck in processing discipline cases contributed to the delay in granting Mr. DeVito's hearing—the number of disciplinary proceedings increased dramatically over three years while the revamping of disciplinary procedures was taking place. While Mr. DeVito points to Park District employees who managed to escape the morass caused by the bottleneck, the existence of these employees without any more evidence is not enough to support Mr. DeVito's claim that the bottleneck did not exist and could not have caused the year-long delay in scheduling his hearing. There is similarly not enough evidence to support Mr. DeVito's claim that "someone" in the Park District intentionally delayed

his claim. While we sympathize with Mr. DeVito—he was without pay for a year while he was waiting for his post-termination hearing—we do not believe that his wait, in light of the circumstances presented in the record of this case and the fact that Mr. DeVito received an adequate pre-deprivation hearing, was so long that it reached the point of a constitutional violation. We think the district court correctly granted summary judgment in favor of the Park District.

The district court also concluded, Mr. DeVito says incorrectly, that even if there was some nefarious action on the part of the Park District or of its employees, Mr. DeVito's claim must fail because Mr. De-Vito had an adequate state remedy in the form of mandamus. The district court stated that Mr. DeVito could have brought a mandamus action to compel the Park District to comply with its own procedure in a timely fashion. Memorandum Opinion at 8. Mr. DeVito persuasively argues that mandamus is used only to compel a specific duty or act, but mandamus does not lie where the order would interfere with the exercise of a discretionary act. *See People v. Schyve*, 112 Ill.App.3d 777, 68 Ill.Dec. 407, 410–411, 445 N.E.2d 1260, 1263–64 (1983), *affirmed, People v. Roush*, 101 Ill.2d 355, 78 Ill.Dec. 349, 462 N.E.2d 468 (1984) (court went beyond its authority in prescribing the exact steps the defendants had to take in executing their duties). The Park District's duty to grant Mr. DeVito a post-termination hearing was not discretionary—the Park District's own Personnel Policy Manual indicates Mr. DeVito was entitled to a hearing. However, the exact timing of such a hearing, by the Park District's own admission, was discretionary because the Park District's Personnel Policy Manual does not specify a time for post-termination hearings. Therefore it seems, as Mr. DeVito argues, that the district court was incorrect and an Illinois court could not have ordered his post-termination hearing to take place at any particular time. We reserve judgment on this issue, however. Whether the district court was right or wrong is not relevant to our disposition of this case as we have already decided the district court correctly granted summary judgment in the Park District's favor on other grounds.

## CONCLUSION

We believe the district court correctly granted summary judgment in favor of the Park District on Mr. DeVito's claim that the Park District violated his due process rights under the Fourteenth Amendment to the United States Constitution. We therefore

AFFIRM.