Lionel **BORDELON,** Plaintiff,

v.

**CHICAGO SCHOOL REFORM BOARD OF TRUSTEES, successor to the Board of Education of the City of Chicago,** Defendant.

No. 98 C 1932.

United States District Court, N.D. Illinois, Eastern Division.

June 3, 1998.

---

Edward Jerome Copeland, Michael F. Braun, Schuyler, Roche & Zwirner, Chicago, IL, for Plaintiff.

Marilyn F. Johnson, James Jordan Seaberry, Jr., Chicago Board of Education, Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

### Introduction

On March 30, 1998, plaintiff Lionel Bordelon filed a two count complaint against his employer, Chicago School Reform Board of Trustees, alleging that defendant deprived him of liberty and property rights without due process of law and breached his employment contract when it unilaterally, without prior notice or hearing, reassigned him from his position as principal of Kozminski Community Academy to an administrative position in the Central Office. On April 13, 1998, plaintiff moved for a temporary restraining order and a preliminary injunction seeking reinstatement as the principal at Kozminski, and an injunction preventing defendant from reassigning plaintiff without due process. On April 21, 1998, this court referred the motion to Magistrate Judge Ashman for a Report and Recommendation ("R & R") pursuant to Fed.R.Civ.P. 72(b) and Local General Rule 2.41B. On May 8, 1998, Judge Ashman issued an R & R, recommending that the court grant the motion for temporary restraining order and preliminary injunction, reinstate plaintiff to his position as principal of Kozminski, and enjoin defendant from removing plaintiff from that position without notice and an opportunity to be heard. Judge Ashman also recommended that plaintiff's motion for preliminary injunction be treated as a motion for permanent relief under Fed.R.Civ.P. 65(a)(2). Defendant filed objections to Judge Ashman's R & R. Plaintiff responded to defendant's objections and also filed his own "limited objection" to the R & R. For the reasons set forth below, the court hereby denies both plaintiff's and defendant's objections, and approves and adopts Judge Ashman's comprehensive and well reasoned R & R, as modified herein.

### Discussion

The facts of this case, which are essentially undisputed, are fully set forth in the R & R and will not be repeated here.[1] Defendant's objections to the R & R center on Judge Ashman's conclusion that plaintiff's employment contract gives plaintiff a property interest in the position of principal of Kozminski, and that defendant's action in transferring plaintiff to a position even defendant admits is nothing more than a "paper shuffler" at defendant's Central Office without notice or opportunity to be heard deprived plaintiff of that interest without due process of law.

■ As noted by Judge Ashman and conceded by defendant, procedural due process claims encompass a two step analysis. *Doherty v. City of Chicago*, 75 F.3d 318, 322 (7th Cir.1996). The court must first determine whether plaintiff has been deprived of a protectible property or liberty interest. If plaintiff has been deprived of such an interest, the court must then determine what process is constitutionally due. *Id.*

■ As Judge Ashman noted, citing *Vail v. Board of Education of Paris Union School District No. 95*, 706 F.2d 1435, 1437 (7th Cir.1983), "a term of employment set by contract gives rise to a property interest which the state cannot extinguish without conforming to the dictates of procedural due process." Defendant does not dispute that the employment contract gives plaintiff a property right to continued employment, but does dispute Judge Ashman's conclusion that plaintiff had a constitutionally protected interest in the position of principal at Kozminski. Because defendant continues to employ plaintiff at the same rate of pay, it argues that it has not deprived plaintiff of a constitutionally protected right.

In reaching his conclusion, Judge Ashman correctly noted that the nature and boundaries of the property interest protected is defined by the instrument that creates the interest. *See Vail*, 706 F.2d at 1437. As stated by Justice Stewart in *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972),

> ... property interests subject to procedural due process protection are not limited by a few rigid, technical forms. Rather 'property' denotes a broad range of interests that are secured by existing 'rules or understandings.' A person's interest in a

---

1. A copy of the R & R is attached to this opinion.

benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing.

In the instant case, the instrument creating plaintiff's claim of entitlement is his employment contract. That document, entitled "Uniform Principal Performance Contract," was entered into by the Kozminski Local School Council as agent for defendant for the purpose of the contract only, and by plaintiff, who is defined in the contract as "Principal." The term provision of the contract provides:

The term of employment shall be for four years and the Principal is hereby employed and agrees to serve as the Principal commencing July 1, 1995 and ending June 30, 1999 except as provided in Section V.

As is readily apparent from the section quoted above, plaintiff was specifically "employed ... as the Principal" of Kozminski for a period of four years, and thus has, at the very least, a legitimate contractual claim to that position. The contract goes on, as recognized in the R & R, to delineate plaintiff's duties, all of which pertain to acting as principal of Kozminski, and none of which pertain to any administrative function of the Central Office.

Despite the language quoted above, defendant argues, relying on a statement in *Swick v. City of Chicago*, 11 F.3d 85, 87 (7th Cir. 1993), that in the employment context, property interests have been limited to clearly identifiable benefits, such as salary or other economic benefits. *Swick*, however, cannot be read so broadly. In *Swick*, a Chicago police officer was placed on involuntary sick leave for more than a year. He received no salary, but received the same amount of money he would have earned through sick pay. He argued that the defendant's action of placing him on sick leave without a hearing deprived him of a property right without due process. To create his property interest, he relied on a state law providing that nonprobationary police officers could not be removed, discharged, or suspended for more than 30 days except for cause. The Seventh Circuit rejected the plaintiff's claim, holding

that being placed on sick leave was not the equivalent of suspension because the plaintiff did not suffer any pecuniary loss, either directly or indirectly. This was particularly true because the plaintiff retired shortly after reinstatement, thus negating any potential harm from the loss of sick leave. The court was careful to note, however, that it "could imagine a case in which a period of forced inactivity impeded promotional opportunities or had other indirect effects on post retirement income," neither of which was argued. The court noted that placing a person on sick leave is not a disciplinary measure, and that the plaintiff had not argued that the defendant had harmed his reputation by forcing him to take sick leave for psychological reasons.

In the instant case, however, the contract itself provides the only method for termination: (1) by agreement of the parties; (2) discharge for cause; (3) closure of Kozminski; (4) death, resignation, or retirement of plaintiff; (5) or misrepresentation by plaintiff of his qualifications. None of these conditions for termination have been asserted by defendant. Moreover, unlike in *Swick*, plaintiff has specifically asserted that defendant's actions have injured his opportunity for future employment as a principal in any school district by damaging his name, reputation, honor and integrity. Additionally, "transferring" plaintiff to an administrative paper shuffler position, after defendants' investigation found no cause for removal, can only be interpreted as a disciplinary measure.

It is true that as an alternate holding the *Swick* court stated that it did not think that property within the sense of the Fourteenth Amendment should be extended to purely dignitary or otherwise non-pecuniary dimensions of employment. *Id.* at 86. That holding is limited to its factual scenario. The court noted that the plaintiff could have taken another job while on sick leave and doubled his income. It also noted that the injury resulting from being *temporarily* deprived of the right to wear a uniform, carry a badge and gun, and to arrest people is *de minimus*. In the instant case, however, plaintiff has a relatively short-term contract and, unless defendant is enjoined, plaintiff will be totally

deprived of his right to act as principal, which can affect his ability to so act in the future.[2] Being temporarily restricted from acting as a police officer while on sick leave is a far cry from being removed as a principal after being fully exonerated of highly publicized yet unsubstantiated charges. Moreover, unlike *Swick*, in order to receive compensation, plaintiff is required to work at the Central Office, in an essentially useless job, preventing him from employment elsewhere.

Defendant also relies on *Hardiman v. Jefferson County Board of Education*, 709 F.2d 635 (11th Cir.1983), in which a tenured high school teacher and coach who was suspended with pay for eight days argued that he had a property interest to not only the full pecuniary benefits of his position, but also to the right to teach and coach. The Eleventh Circuit did not reach the issue, concluding that even if the right to teach and coach standing alone could constitute a protected property interest, the plaintiff's eight day loss was de minimus. The court noted in dicta, however, that viewing plaintiff's contract in terms of traditional contract law, plaintiff's right to teach and coach was merely the consideration he gave for receiving salary and other benefits. As such, any rights concerning plaintiff's teaching and coaching belonged to the defendant. *Id.* at 638 n. 2. As in *Hardiman*, defendant argues that any rights concerning plaintiff's acting as principal belong to it, and that it has waived any such rights.

The Seventh Circuit has not squarely addressed the issue of whether a public employee with an admitted property interest in the term of his employment may also have a property right to the specific position or office. In *Thornton v. Barnes*, 890 F.2d 1380 (7th Cir.1989), however, the court did hold that board members of a municipal corporation who had been appointed to serve four year terms might have property interests in their offices despite the fact that they served without compensation. The court based this decision on the "totality of circumstances" surrounding the plaintiff's appointment and the substance of plaintiff's rights as determined by state law.[3] Thus, the Seventh Circuit has clearly indicated that under the proper factual situation, a public employee may well be able to establish a property right to a particular position.

In the instant case, the "substance of plaintiff's property right" is determined by his contract and the "totality of circumstances" surrounding its execution. *Barnes*, 890 F.2d at 1388 n. 9. That contract, which is a Uniform Principal Performance Contract, was entered into by the Kozminski Local School Council acting as defendant's agent for the limited purpose of hiring a principal for Kozminski. The contract specifically provides that in the event it is terminated by non-renewal, plaintiff will not be reinstated to any former position he had held with defendant. Under these circumstances, where plaintiff was hired by a Local School Council to act as principal of a specific school, as opposed to being "assigned" to that school by defendant, plaintiff has a strong argument that he has a legitimate entitlement to the specific position.

Defendant argues however, that such a conclusion is inconsistent with Section 10–23.8(b) of the Illinois School Code, 105 ILCS 5/10–23.8(b), and renders the section ineffectual. That section, which is titled "Reclassification of Principals," sets forth the procedures for reclassification by demotion or reduction in rank for which a lower salary is paid. The final paragraph of the section provides:

> Nothing in this Section prohibits a board from ordering lateral transfers of principals to positions of *similar rank and* equal salary. (Emphasis added).

**2.** Judge Ashman rejected plaintiff's liberty claim for lack of evidence. Plaintiff objects to the R & R on this lone point, not because there was sufficient evidence before the magistrate judge, but because plaintiff has acquired more evidence. Because the court is adopting Judge Ashman's conclusion to grant the injunction, plaintiff's objection is denied as moot.

**3.** The court did not "decide definitively whether a property right exists" because that case, like the instant case, was on appeal from the grant of a preliminary injunction, which only required the court to determine the likelihood of the plaintiff's success on the merits. *Thornton*, 890 F.2d at 1388, n. 12.

784

Because this issue was not raised before Judge Ashman, he had no reason to determine whether his conclusion was inconsistent with the act. Even accepting defendant's position that because the contract was made pursuant to Illinois law it must be read consistent therewith, the court concludes that at the very least plaintiff has a legitimate entitlement to a position as a principal. This conclusion does not change the outcome, however, because the section provides that principals may be transferred only to other positions of similar rank and equal salary, i.e. to another school as principal. *See, e.g. Stevens v. Tillman*, 661 F.Supp. 702 (N.D.Ill. 1986) (Board has statutory authority to transfer principal from one school to another). Nothing in Section 10–23.8(b) gives defendant the right to transfer plaintiff to a "paper shuffler" position in the Central Office. Judge Ashman held, and this court agrees, that the two positions are not similar for purposes of the act. Accordingly, the conclusion of the R & R is correct and both plaintiff's and defendant's objections thereto are denied.

### Conclusion

The court accepts and adopts Judge Ashman's May 8, 1998 Report and Recommendation as modified by this opinion. Although neither party has objected to Judge Ashman's recommendation that the preliminary and permanent injunction stages of the case be consolidated pursuant to Fed.R.Civ.P. 65(a)(2), it is unclear whether the parties had sufficient notice that consolidation would be ordered when they waived their right to present evidence to Judge Ashman. Moreover, plaintiff may wish to present his additional evidence of a liberty interest violation. Accordingly, the court elects not to consolidate the permanent and preliminary injunction stages of this case. The motion for a preliminary injunction is granted. Defendant is ordered to reinstate plaintiff as principal of Kozminski Community Academy and is enjoined from transferring him to any position other than as a principal. No bond is required.

### *REPORT AND RECOMMENDATION*

### I. *Background*

On March 30, 1998, Plaintiff, Lionel Bordelon (hereinafter "Bordelon"), filed a two-count complaint alleging the deprivation of his civil rights and the breach of his employment contract with the Defendant, Chicago School Reform Board Trustees of (hereinafter "the Trustees"). Plaintiff seeks, *inter alia*, his reinstatement as the Principal of Kozminski Community Academy and an injunction preventing the Board from reassigning Plaintiff from his position as Principal without due process of law.

The facts relevant to this motion are not in dispute. On or about April 12, 1995, Plaintiff entered into a Uniform Principal Performance Contract with the Kozminski Local School Council wherein Plaintiff contracted to serve as the Principal of the Kozminski Community Academy located at 936 East 54th Street in Chicago. Pursuant to the contract, Plaintiff was to be employed as the Principal of the Kozminski Community Academy commencing July 1, 1995 and ending June 30, 1999. Additionally, the contract provides that it constitutes the entire agreement of the parties and that no additions, deletions, or modifications may be made thereto.

Plaintiff was employed without incident as the Principal of the Kozminski Community Academy for approximately one and a half years. However, by letter dated December 12, 1996, the Kozminski Local School Council recommended that the Board of Education revoke Plaintiff's contract. This recommendation was predicated on several alleged violations of state and federal law, in addition to allegations of other misconduct and wrongdoing. After conducting a "lengthy investigation" wherein "each and every assertion brought forth by [the Local School Council] was examined in detail," Paul Vallas, Chief Executive Officer of the Board of Education, concluded that the charges were insufficient to satisfy the legal standard required by Section 34–85 of the Illinois Code which governs the removal of a principal. Vallas consequently declined to approve the charges pending against Plaintiff, and by letter dated February 24, 1997, so informed Josephine

Hampton, the Chairperson of the Kozminski Local School Council.

While Vallas' findings would appear to have resolved the conflict surrounding Plaintiff's employment, such was not the case. On March 11, 1997, Plaintiff received a letter from Dr. Blondean Y. Davis, Deputy Chief Education Officer of the Board of Education, informing him that, effective March 12, 1997, he was to be "temporarily reassigned" to the Office of Schools and Regions of the Board of Education (hereinafter "the Central Office"). Defendant made this decision allegedly under the authority of Board Rule 4–52. Board Rule 4–52 grants the General Superintendent of Schools authority to assign a principal to a temporary assignment when the Superintendent believes the reassignment to be in the best interests of the Chicago Public Schools and the reassignment does not unreasonably compromise the educational program at the principal's school.

On October 28, 1997, Plaintiff wrote a letter to Marilyn Johnson, General Counsel of the Board of Education, requesting information as to whether he was the subject of an investigation and if so, requesting a copy of the charges against him. Plaintiff received no response to the letter. To date, Plaintiff has been working in the Central Office for over a year, during which time he has continued to receive the salary and benefits provided under his contract.

As Defendant has given no indication that the temporary reassignment will end prior to the expiration of Plaintiff's employment contract, Plaintiff has filed the instant motion for a temporary restraining order and preliminary injunction, asking that he be reinstated to his former position as Principal of the Kozminski Community Academy and further asking that the Defendant be enjoined from taking any action against the Plaintiff which would prevent him from being employed in this position. Plaintiff alleges that, without such injunctive relief, he will suffer irreparable harm as a result of the Defendant's actions, including the deprivation of his property and liberty rights under the Fourteenth Amendment, and the loss of his good name, reputation and honor. Plaintiff concludes that, while the issuance of an injunction will prevent his irreparable injury, such relief will not cause any loss or injury to the Defendant.

## II. *Analysis*

We begin by noting that, during oral argument, the parties waived their right to present evidence and agreed to stand on the facts as set out in their papers. In light of the absence of any factual disputes, the Court has made its ruling based strictly on the parties' written submissions.

■ Turning to the merits of the instant motion, the Defendant argues that Plaintiff's motion for an injunction [1] should be denied because Plaintiff has failed to establish the prerequisites to injunctive relief. In order to qualify for a preliminary injunction, Plaintiff must show that: (1) there is a reasonable likelihood of success on the merits; (2) he will suffer irreparable harm without the issuance of a preliminary injunction; (3) no adequate remedy exists at law; (4) the harm he will suffer is greater than any harm the Defendant will suffer if injunctive relief is granted; and (5) the injunction will not harm the public interest. *Brunswick Corp. v. Jones,* 784 F.2d 271 (7th Cir.1986); *Roland Machinery Co. v. Dresser Industries,* 749 F.2d 380 (7th Cir.1984). Defendant contends that Plaintiff is unable to establish any of above factors and is therefore not entitled to injunctive relief. The Court reviews the five factors below.

### A. Likelihood of Success on the Merits

In addressing the first factor, Defendant contends that the Plaintiff has misconstrued the action that the Board of Education (hereinafter "the Board") has taken. Defendant contends that, contrary to Plaintiff's assertions, he has not been removed or terminated and that, as a result, Plaintiff's reliance on the discharge procedures set forth in 105 ILCS 5/34–85 is misplaced. Defendant argues that, because Bordelon has not been

---

1. Defendant first advances arguments directed at defeating the Temporary Restraining Order portion of Plaintiff's motion. However, as this case has advanced beyond the TRO stage, we do not address the parties' arguments which relate to the Plaintiff's request for such relief.

terminated, he has not suffered any cognizable constitutional deprivation and is therefore not entitled to notice and a pre- or post-termination hearing. Additionally, Defendant argues that even if Plaintiff's reassignment did constitute a deprivation of a protected property right, the delay in providing a hearing does not implicate the due process clause. We disagree.

■ Plaintiff alleges that the Defendant deprived him of his Fourteenth Amendment procedural[2] due process rights in violation of 42 U.S.C. § 1983 when it reassigned him to his current position at the Central Office without a hearing or notice of the charges against him. To succeed in a Section 1983 action, Plaintiff must establish that the conduct complained of was carried out under color of state law and that this conduct deprived him of rights, privileges or immunities guaranteed by the Constitution or laws of the United States. *Larsen v. City of Beloit*, 130 F.3d 1278, 1282 (7th Cir.1997). In this case, Defendant apparently concedes that it was acting under color of state law when it reassigned the Plaintiff.[3] Thus, the only remaining issue is whether the Defendant deprived Bordelon of his procedural due process rights.

Procedural due process claims encompass a two step analysis. *See Doherty v. City of Chicago*, 75 F.3d 318, 322 (7th Cir.1996). First, the court must ascertain whether the plaintiff has been deprived of a protected property or liberty interest, and if so, the court must then determine what process is constitutionally due. *See id.*

■ Turning to the first factor, it is well established that "a term of employment set by contract [gives rise to] a property interest which the state cannot extinguish without

conforming to the dictates of procedural due process." *Vail v. Board of Education of Paris Union School District No. 95*, 706 F.2d 1435, 1437 (7th Cir.1983), *aff'd*, 466 U.S. 377, 104 S.Ct. 2144, 80 L.Ed.2d 377 (1984) (citing *Hostrop v. Board of Junior College District No. 515*, 471 F.2d 488, 494 (7th Cir.1972), *cert. denied*, 411 U.S. 967, 93 S.Ct. 2150, 36 L.Ed.2d 688 (1973)). In ascertaining the nature and boundaries of the property interest protected, the Court must look to the instrument which creates the interest asserted—here, Bordelon's employment contract. *See Vail*, 706 F.2d at 1437.

■ Plaintiff's employment contract clearly created a contractual right of employment for the term of the contract. We reach this conclusion on the basis of the contract terms themselves which provide that the contract may not be terminated except by (1) written agreement of the parties; (2) discharge of the principal for cause; (3) closure of the school; (4) the death, resignation or retirement of the principal; or (5) misrepresentation regarding the principal's certification.

The rights created by the contract included the Plaintiff's right to perform the duties and responsibilities incident to the position of Principal of the Kozminski Community Academy, in exchange for which, the Plaintiff was to receive the specified compensation and benefits. The rights encompassed by the contract therefore include not only the relevant compensation, but also the intangible, non-economic benefits that flowed from Plaintiff's duties and responsibilities as Principal. By removing Plaintiff from his position as Principal and assigning him to a job in the Central Office with responsibilities which are not commensurate with those performed by Plaintiff in his capacity as Principal,[4] Defendant has, in effect, terminated

---

**2.** The Court notes that, while the deprivation of a constitutionally protected property interest such as the one suffered by Plaintiff may be sufficient on its own to support a substantive due process claim, Plaintiff does not appear to have asserted such a claim in his complaint or briefs. In order to assert a substantive due process violation, the Plaintiff must plead and prove that he had a constitutionally protected property or liberty interest, that the decision to deprive him of that interest was arbitrary or irrational, and that he either suffered a separate constitutional violation or that the state law remedies are inadequate.

*New Burnham Prairie Homes, Inc. v. Village of Burnham*, 910 F.2d 1474, 1481 (7th Cir.1990). Plaintiff has neither alleged nor argued any of the above.

**3.** We base this conclusion on the absence of any argument to the contrary in Defendant's response brief.

**4.** Indeed, when the Court suggested at oral argument that the Plaintiff had been assigned to a "paper shuffler" position in the Central Office,

Plaintiff's employment as Principal, and while Defendant's decision to continue to provide Plaintiff with his salary and benefits may impact the determination of damages, it does not alter the fact that Plaintiff is no longer performing the job for which he contracted. Thus, the reassignment deprived Plaintiff of the position to which he has a contractual right and in which he consequently maintains a protected property interest.

The Defendant's argument that Plaintiff was reassigned, pursuant to the authority of Board Rule 4–52, rather than terminated is unconvincing. The contract, as it relates to the Plaintiff's responsibilities, mentions the Kozminski Community Academy in at least six paragraphs. Specifically, the contract provides, *inter alia*, that Plaintiff is to supervise the educational operation of the Kozminski Community Academy; assume administrative responsibility and instructional leadership for the planning, operation and evaluation of the educational program of the Kozminski Community Academy; assume primary responsibility for the improvement of the instruction at the Kozminski Community Academy; develop a three-year Local School Improvement Plan for the Kozminski Community Academy; and develop an expenditure plan for the Kozminski Community Academy. Thus, Plaintiff's reassignment to the Central Office constitutes a deprivation of all of the rights and responsibilities provided to him as Principal of the Kozminski Community Academy in that it not only prevents Plaintiff from performing the responsibilities attendant to his position as Principal but also prevents him from serving the Kozminski Community Academy in any capacity.

In light of the fact that Plaintiff's reassignment effectively operates as a termination of the Plaintiff's employment as Principal of the Kozminski School, we conclude that the

Board acted outside its authority in reassigning Plaintiff pursuant to Board Rule 4–52. We reach this conclusion on two bases. First, we note that the contract does not incorporate this Rule[5] and therefore does not provide the Board with resort to the Rule as a means of removing Plaintiff from his position. The contract specifically provides the mechanisms for such a removal—namely, that Plaintiff may be removed for cause. However, Vallas concluded after conducting his investigation that no such cause existed in this case. Thus, we view the Board's actions pursuant to Board Rule 4–52 as nothing more than an attempt to evade the terms of the Plaintiff's contract.

Second, we note that even if Board Rule 4–52 was incorporated into the terms of the contract, the rule only granted the Superintendent authority to **temporarily** reassign Plaintiff. In the instant case, Plaintiff was reassigned approximately half way through his contract term. Plaintiff has remained in that reassignment for over 13 months and the Board has given no indication that Plaintiff's reassignment will conclude prior to the end of his contract term which expires on June 30, 1999.[6] Thus, Plaintiff has, for all intent and purposes, been **permanently** reassigned to the Central Office and the Defendant has consequently acted outside of the scope of the Rule itself in carrying out the instant reassignment.

The bottom line of the above conclusions is that Defendant cannot be allowed to make an end run around the terms of the contract and the Illinois statute governing the removal of principals by calling the removal of a principal a "temporary reassignment."

Based on the foregoing, we conclude that Plaintiff has demonstrated a reasonable likelihood of success on the merits with respect to his ability to establish the deprivation of a

---

Defendant's attorney did not deny this characterization.

**5.** The failure to incorporate Board Rule 4–52 into the contractual terms is especially noteworthy in light of the fact that the contract did incorporate the Board Rules governing compensation, Plaintiff's professional growth through his

attendance at professional meetings and his pursuit of additional education, and Plaintiff's other obligations under the contract.

**6.** Of the 34 months served under his contract to date, Plaintiff has spent approximately 38% of this time reassigned to the Central Office.

constitutionally cognizable property right.[7] This conclusion, however, does not end our inquiry into Plaintiff's due process claim, for it is not the deprivation of Plaintiff's property interest which triggers a procedural due process violation, but rather, it is the Defendant's failure to provide the constitutionally required notice and opportunity to be heard.

■ Defendant contends that, even if Plaintiff has a protected property interest, the delay in providing him with a hearing does not implicate the due process clause. In support of this assertion, Defendant cites *DeVito v. Chicago Park District*, 972 F.2d 851 (7th Cir.1992), for the proposition that a one-year delay in the administration of a post-deprivation hearing does not violate the due process clause. Defendant, however, misreads *DeVito*.

In *DeVito*, the plaintiff was formally discharged after he received notice of the charges against him and a pre-suspension hearing. 972 F.2d at 851. Plaintiff appealed the discharge and requested a post-termination hearing. *Id.* Approximately one year after this request, the Park District finally scheduled a post-termination hearing. *Id.* In ruling that the one-year delay in providing a post-termination hearing did not violate plaintiff's due process rights, the court examined three factors: (1) the importance of the private interests and the harm to the interests occasioned by the delay in providing the hearing; (2) the justification offered by the government for the delay and its relation to the underlying governmental interest; and (3) the likelihood that the interim decision may have been erroneous. *Id.* at 855. Analyzing these factors, the Seventh Circuit noted that the Park District's administrative backlog provided a legitimate reason for the delay and that the risk of the interim deci-

sion being erroneous was minimized by the fact that the plaintiff was given a pre-termination hearing. *Id.* at 856–57. The court consequently concluded that the delay in the administration of the plaintiff's post-discharge hearing did not give rise to a constitutional violation. *Id.* at 851.

Contrary to Defendant's assertions, *DeVito*, therefore, does not stand for the proposition that the Defendant may delay the Plaintiff's hearing for over a year without implicating the due process clause. Indeed, applying *DeVito* to the facts of the instant case yields the opposite conclusion, for in the instant case, the Plaintiff has not been given notice of the charges against him, nor a hearing of any sort. Additionally, the Defendant has offered no explanation whatsoever for the lengthy delay in providing the Plaintiff with notice or a hearing. Indeed, rather than offering an explanation for the delay, Defendant has steadfastly maintained that Plaintiff is not entitled to a hearing now or at any time in the future and, in fact, the real reason no notice or hearing has been provided is that, according to Vallas on behalf of Defendant, insufficient grounds exist for a removal and thus, a hearing would be superfluous. On these facts, we easily conclude that the Plaintiff has established a deprivation of his procedural due process rights and has consequently successfully established the elements of his Section 1983 claim.[8]

## B. The Adequacy of the Remedy At Law and Plaintiff's Irreparable Harm

■ Defendant contends that Plaintiff will not suffer irreparable harm in the absence of injunctive relief because he has and will continue to draw his full salary and benefits during the term of his reassignment. Thus, Defendant concludes that the reassignment

---

7. Although it is unclear from Plaintiff's complaint and briefs, it appears that Plaintiff also attempts to assert the loss of a liberty interest based on damage to his reputation and integrity. We, however, find no competent evidence that the Board or any of its agents publicly revealed any of the charges made against Plaintiff. Plaintiff bases his claim, in large part, on statements made by Josephine Hampton. However, the comments attributable to Josephine Hampton were made in her individual capacity during her campaign for reelection to the local school coun-

cil and cannot therefore be attributed to the Board. We consequently note that the relief granted by this Court is in no way predicated on a finding that the School Board's actions violated Plaintiff's liberty interest.

8. In ruling on the instant motion, we do not address the Plaintiff's breach of contract count as that count does not seek injunctive relief but rather seeks monetary damages.

has absolutely no economic impact on the Plaintiff and therefore does not necessitate the issuance of an injunction. Additionally, Defendant argues that the Plaintiff's breach of contract and constitutional claims are both compensable by monetary damages, should Plaintiff prevail on the merits. Defendant therefore concludes that Plaintiff has adequate legal remedies. Defendant's conclusions, however, are without merit.

█ To justify the entry of a preliminary injunction, the Plaintiff must first prove that he has no adequate remedy at law. This requirement is a vestige from the time when there were separate tribunals for legal and equitable relief and equity courts were only empowered to provide relief when no legal remedies were available or when those that were available were ineffective. 11 CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, INJUNCTIONS § 2944, pp. 392–94 (1973). The Seventh Circuit has stated that there is no adequate remedy at law if the plaintiff "will suffer irreparable harm in the interim—that is, harm that cannot be prevented or fully rectified by final judgment after trial ...." *Roland Machinery*, 749 F.2d at 386. Although sometimes treated as conceptually distinct elements, the no adequate remedy at law element and irreparable harm element are really part of the same analysis. *See Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir.1992). Thus, "a conclusion that the injury is irreparable in turn establishes that there is no adequate remedy at law." *Tanford v. Brand*, 883 F.Supp. 1231, 1237 (S.D.Ind.1995) (citing *Fleet Wholesale Supply v. Remington Arms Co.*, 846 F.2d 1095, 1098 (7th Cir.1988)). With these principles in mind, we turn to the facts of the case now before us.

Interestingly, Defendant first argues that there is an adequate remedy at law because the Plaintiff can collect monetary damages if he prevails at trial, but then argues that the Plaintiff has suffered no irreparable injury because his reassignment has had no economic impact. We disagree.

█ Plaintiff's reassignment has and will continue, if left unabated, to result in an irreparable injury for which no adequate remedy at law exists. We begin by noting that irreparable harm is presumed to flow from a constitutional violation which is not fully compensable by monetary damages. *Hamlyn v. Rock Island County Metropolitan Mass Transit District*, 960 F.Supp. 160, 162 (C.D.Ill.1997); *Tanford*, 883 F.Supp. at 1237; 11 WRIGHT AND MILLER, INJUNCTIONS § 2944, p. 94 (1973). We have already concluded that the Plaintiff has likely established a constitutional violation arising from the deprivation of the non-economic benefits associated with his position as Principal and we now conclude that this violation is not fully compensable through the award of monetary damages.

We reach this conclusion based on the nature of the losses at issue here. The losses occasioned by the Defendant's constitutional violation are intangible and nebulous, for they are bound up with such benefits as job satisfaction, professional growth and development, service to the community and professional advancement. For every day that Plaintiff remains assigned to his administrative position, Plaintiff is denied the opportunity to perform his chosen profession. Plaintiff has dedicated significant time and energy to serving the community in his capacity as Principal. Therefore, Plaintiff suffers when he is unable to perform in that capacity. *See Banks v. Chicago Public Schools*, 1996 WL 197545 at *4 (N.D.Ill.1996). In addition to suffering these losses, Plaintiff will also be harmed in that, if the reassignment goes unremedied, Plaintiff's resume will necessarily contain a reference to his removal from the position of Principal of Kozminski and will indicate that his current position is that of an administrator in the Central Office. Money will not adequately compensate Plaintiff for these losses and we thus conclude that Plaintiff has suffered an irreparable injury for which no adequate legal remedy exists.

### C. Harm To the Defendants and the Public Interest

█ With respect to the third and fourth factors, the Defendant contends that the harm to the students, teachers and staff of the Kozminski School that would accrue if

the Court grants the Plaintiff's motion for an injunction militates against such an order. Defendant contends that the Plaintiff is unable to provide the appropriate educational environment and the improvements students need to learn and that the Plaintiff's purported interests must therefore give way to the interests of the student and teachers.

Defendant offers no evidentiary support for its position that the reinstatement of Plaintiff would harm the students or staff of the Kozminski School. The only arguable support offered by Defendant is the School Report issued by the Office of Accountability which was rendered pursuant to observations conducted by that office shortly after Plaintiff was reassigned. This evidence, however, does not support Defendant's argument because it was conducted after Plaintiff left his position and more importantly, because it does not specifically attribute the problems discussed in the report to the Plaintiff. Indeed, the evidence provided by Defendant is to the contrary. After conducting a thorough investigation, Vallas concluded that most of the charges levied against Plaintiff were without foundation or substantial justification and that there was no basis for the initiation of dismissal proceedings.[9] Additionally, Plaintiff provided a long list of programs and activities which he initiated while serving as Principal of the Kozminski School which facts Defendant has not refuted. Finally, there is no evidence that the Kozminski School was ever placed on probation or remediation nor evidence that Plaintiff was ever disciplined or counseled for any alleged failure to adequately perform his job.

Based on the above considerations, the Court finds that the harm to the Defendant which would result from the issuance of this injunction, if there is any harm at all, is greatly outweighed by the harm that will accrue to the Plaintiff if no such relief is granted.

### III. *Conclusion and Recommendation*

Prior to reaching its recommendation on the proper adjudication of the motion now before the Court, the Court first recommends the consolidation of the preliminary and permanent injunction stages of this motion pursuant to Federal Rule of Civil Procedure 65(a)(2). The Court bases this recommendation on its finding that there are no factual disputes and that the evidence considered at this stage would be duplicative of that which would be considered in deciding Plaintiff's prayer for permanent injunctive relief. Based on these findings, the Court believes it would be appropriate to treat the instant motion as one for permanent injunctive relief under Rule 65(a)(2).

Pursuant to this recommendation, the court notes that, in order to obtain permanent injunctive relief, the Plaintiff must establish that he has in fact succeeded on the merits rather than merely establishing the likelihood of success on the merits, as would be required on a motion for preliminary injunctive relief. *Plummer v. American Institute of Certified Public Accountants,* 97 F.3d 220, 229 (7th Cir.1996).

In the instant case, the Court believes that the Plaintiff has satisfied this heightened requirement. As no additional evidence on the issue of the alleged constitutional violation will be forthcoming, the Court finds that the reasoning applied in reaching the conclusion that the Plaintiff established a likelihood of success on the merits is equally applicable to a finding that the Plaintiff has in fact succeeded in establishing the required constitutional violation. The Court thus concludes that the Plaintiff has satisfied all of the factors required for either preliminary or permanent injunctive relief and the Court consequently recommends that the Plaintiff's motion for a preliminary injunction be treated as a motion for permanent injunctive relief and that the motion be granted.

Ordinarily, in granting a motion for injunctive relief based on a procedural due process violation, the Court would recommend that the Plaintiff be given notice of the charges against him and a hearing on those charges. However, as Vallas has already concluded that the charges against Plaintiff were insuf-

---

**9.** To the extent that there were legitimate problems uncovered by Vallas' investigation, Vallas himself concluded that the problems could be promptly addressed without resort to removing Plaintiff from his position.

ficient to support his dismissal and therefore insufficient to warrant a hearing, the Court instead recommends that the Plaintiff be reinstated to his position as Principal of the Kozminski Community Academy and that the Defendant be enjoined from removing Plaintiff from that position without notice and an opportunity to be heard.

Written objections to any finding of fact, conclusion of law, or the recommendation for disposition of this matter must be filed with the Honorable Robert W. Gettleman within ten (10) days after service of this Report and Recommendation. *See* FED. R. CIV. P. 72(b). Failure to object will constitute a waiver of objections on appeal.