709 F.2d 635
 12 Ed. Law Rep. 19
 Kerry Dale HARDIMAN, individually and on behalf of all
others similarly situated; American Federation of
Teachers, Local 2143, Plaintiffs-Appellants,
v.
JEFFERSON COUNTY BOARD OF EDUCATION, Defendant-Appellee.
 No. 81-7816.
 United States Court of Appeals,
Eleventh Circuit.
 June 22, 1983.
 
 Robert L. Wiggins, Jr., Birmingham, Ala., for plaintiffs-appellants.
 Bishop, Sweeney, Colvin & Johnson, Carl E. Johnson, Jr., Birmingham, Ala., for defendant-appellee.
 Appeal from the United States District Court for the Northern District of Alabama.
 Before TJOFLAT and HATCHETT, Circuit Judges and MORGAN, Senior Circuit Judge.
 TJOFLAT, Circuit Judge:
 
 
 1
 This appeal involves a due process challenge to the suspension with pay of a tenured teacher and coach, Kerry Dale Hardiman, employed by the Jefferson County, Alabama, Board of Education. We hold that Hardiman failed to establish the Board's infringement of either a protected "property" interest or a "liberty" interest within the meaning of the due process clause of the fourteenth amendment. Consequently, we affirm the district court's order granting summary judgment for the Board.
 
 
 2
 On May 12, 1981, the principal of Bottenfield Junior High School, Charles Smith, informed Hardiman that a student, Johnny Batchelor, had accused Hardiman of touching Batchelor's girlfriend on the buttocks and of poking her breast with a fork while she was standing in the lunch line. Hardiman denied the allegations and immediately requested to meet with the students and parents involved to resolve the matter. Two days later, on May 14, Smith told Hardiman that the parents would not talk to him or let their children talk to him and that they wanted the matter taken straight to the Board. On that day, and on May 15, Smith informed Board members Gerald Godfrey and Bill Pugh about the allegations and about Hardiman's denial. Also on May 15, Hardiman met with a union representative from the local chapter of the American Federation of Teachers (AFT), Pryor Conrad. Conrad called Godfrey and told him that Hardiman was concerned about the allegations and that he wanted a conference immediately. The following Monday, May 18, Smith informed Hardiman that the Board had suspended him with pay, effective immediately, pending a hearing before the full Board. Hardiman immediately left the school grounds.
 
 
 3
 On May 21, Hardiman filed this action in district court seeking preliminary and permanent injunctive relief ordering that he be reinstated and that he not subsequently be suspended or terminated. Hardiman also sought to represent the class of employees of the Board who were or who would be suspended with pay without due process of law. The next day, May 22, the court held a hearing on Hardiman's prayer for a preliminary injunction. The court heard testimony from Hardiman and Smith. Before the court could render its decision, however, the parties agreed that a hearing would be held the following Tuesday, May 26, before a neutral Board member who would decide whether Hardiman should be suspended with pay pending a hearing before the full Board. Thus, the court withheld ruling on Hardiman's prayer for injunctive relief. The agreed-to hearing was held before Joe Moore, Director of Student Services, who decided that Hardiman should be suspended with full pay pending a full Board hearing. Before the Board could convene this hearing, however, Hardiman resigned.
 
 
 4
 On June 8, the Board moved to dismiss Hardiman's complaint as moot. On July 1, Hardiman amended his complaint to assert a claim for nominal and compensatory damages for the deprivation of due process, and to add AFT Local 2143 as a party plaintiff. On July 21, the district court ordered that the Board's motion to dismiss would be deemed a motion for summary judgment, and requested the parties to file briefs and affidavits in support of or in opposition to the motion. On September 3, the district court entered its order granting summary judgment in favor of the Board. The court held that Hardiman's resignation rendered his individual due process claim moot, and that the case was not a proper one for class certification. As an alternative ground for rejecting Hardiman's claim, the court noted that "there was no property loss prior to resignation. Neither is there substantial evidence that [the Board] published the action taken by it [and therefore its action implicated no liberty interest]." We affirm the district court's order based in part on this alternative ground.
 
 
 5
 Hardiman argues on appeal that the district court erred in rejecting his claim for nominal and compensatory damages for the period between May 18, when he was suspended with pay, and May 26, when he received a hearing before a Board member. He argues that his subsequent resignation did not moot his claim for any damages incurred in this time period. We agree with Hardiman on this point. Nevertheless, in order to prevail on his claim, Hardiman must show that the Board's action in suspending him with pay for a little over a week pending a hearing before the Board infringed on some protected property or liberty interest.
 
 
 6
 Hardiman argues that the mere fact that he was suspended with full pay should not be dispositive. He asserts that his property interest under state law extends not only to the full pecuniary benefits of his position, but also to the right to teach and coach.[1] We need not reject this contention absolutely in order to dispose of it here. In Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), the Supreme Court stated: "The Court's view has been that as long as a property deprivation is not de minimis, its gravity is irrelevant to the question whether account must be taken of the Due Process Clause." Id. at 576, 95 S.Ct. at 737 (citations omitted). Assuming, without deciding, that the right to teach and coach standing alone can constitute a protected property interest under the due process clause, we hold that Hardiman's interest in teaching and coaching for the period from May 18 to May 26 was de minimis.[2] Thus, the Board did not have to take account of the due process clause to protect any property interest of Hardiman's.
 
 
 7
 Hardiman argues also that his suspension with pay from May 18 to May 26 infringed on his liberty interest because the charges against him were likely to stigmatize him and did stigmatize him in the community. There is no question that the nature of the charges here are such that they may stigmatize a person and thus give rise to a liberty interest. See Board of Regents v. Roth, 408 U.S. 564, 572-75, 92 S.Ct. 2701, 2706-08, 33 L.Ed.2d 548 (1972). Nevertheless, there are two reasons why Hardiman fails to establish a protected liberty interest.
 
 
 8
 The first hurdle stems from the Supreme Court's decision in Paul v. Davis, 424 U.S. 693, 701, 96 S.Ct. 1155, 1161, 47 L.Ed.2d 405 (1976), that a person's interest in reputation alone, "apart from some more tangible interests such as employment," is not a protected liberty interest within the meaning of the due process clause. As we recognized in Moore v. Otero, 557 F.2d 435, 437 (5th Cir.1977): "To establish a liberty interest sufficient to implicate fourteenth amendment safeguards, the individual must be not only stigmatized but also stigmatized in connection with a denial of a right or status previously recognized under state law."
 
 
 9
 In Moore the court held that a policeman's transfer from corporal, a position in which the court held the policeman had no property interest, to patrolman "[did] not provide the additional loss of a tangible interest necessary to give rise to a liberty interest," id. at 438, and thus did not provide the "plus" of the Paul v. Davis "stigma-plus" test. Again, we need not hold that a suspension with pay can never provide the tangible loss necessary under the Paul test. In this case, however, we hold that Hardiman's suspension with pay from May 18 to May 26 did not satisfy such test. Thus, Hardiman has failed to allege a protected liberty interest under the due process clause.
 
 
 10
 Our resolution of the foregoing question makes it unnecessary for us to review the district court's finding that there was no substantial evidence that the Board had ever published the charges against Hardiman, and thus Hardiman could allege no deprivation of liberty. Nevertheless, we agree with this determination, and adopt it as an alternative, independent basis for our holding that Hardiman was not deprived of a "liberty" interest.
 
 
 11
 To allege a deprivation of liberty, one must show that the state published a false, stigmatizing statement in the course of altering a state law right or status. See Thompson v. Bass, 616 F.2d 1259, 1266 (5th Cir.), cert. denied, 449 U.S. 983, 101 S.Ct. 399, 66 L.Ed.2d 245 (1980), and cases cited therein. The district court held that Hardiman failed to satisfy the publication requirement. We are mindful that we review this case in a summary judgment posture and therefore must view the evidence in the light most favorable to Hardiman. Nevertheless, we agree with the district court. Hardiman alleged only that the charges against him became public knowledge in the school community, and that he himself did not disseminate this information. The record is bare of any allegation or proof that the Board was responsible for this situation. Aside from Hardiman and the Board and even the union, the children and parents involved obviously knew of the charges and were capable of disseminating them and were at least as likely to do so as the Board. Thus, without any allegation or proof that the Board published the charges, Hardiman's claim fails.
 
 
 12
 Finally, we affirm the district court's denial of class certification. As our analysis illustrates, the particularized inquiry necessary to determine whether a protected property or liberty interest exists when an employee is suspended with pay makes this type of case ill-suited for class resolution.
 
 
 13
 In sum, we hold that Hardiman failed to allege a protected property or liberty interest under the due process clause of the fourteenth amendment.
 
 
 14
 AFFIRMED.
 
 
 
 [1]
 The parties do not dispute, and we hold, that Hardiman, as a tenured teacher in the midst of his contract, had a due process property interest in his position. See Vanelli v. Reynolds School Dist. No. 7, 667 F.2d 773 (9th Cir.1982). Thus, absent an "extraordinary situation," Hardiman would have been entitled to some form of hearing prior to being suspended without pay. See Thurston v. Dekle, 531 F.2d 1264 (5th Cir.1976), vacated on other grounds, 438 U.S. 901, 98 S.Ct. 3118, 57 L.Ed.2d 1144 (1978), relevant portion of opinion reinstated, 578 F.2d 1167 (5th Cir.1978)
 
 
 [2]
 Although we need not decide whether the "right" to teach and coach can ever be deemed a property interest, we note that property interests arise from "rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Id. Viewed in terms of contract law, Hardiman's "right" to teach and coach was merely the consideration he gave for receiving salary and other benefits. As such, any rights concerning Hardiman's teaching and coaching belonged to the Board, who presumably was free to waive such rights. Thus, it is difficult to ascertain how his "right" to teach and coach could amount to anything more than an "abstract need or desire" to do so or a "unilateral expectation" that he would be allowed to continue to do so
 We think it more likely that in certain circumstances a prolonged suspension might amount to a significant change of status under state law that would satisfy the standard of Paul v. Davis, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), see discussion in text infra, and thus would enable the employee to prove a deprivation of liberty. We can envision a situation in which, for example, the government in bad faith suspends an employee for an extended duration in the hope of forcing the employee to resign. In such a situation, the prolonged suspension albeit with pay might interfere with the "right of the individual to contract [or] to engage in any of the common occupations of life," Roth, 408 U.S. at 572, 92 S.Ct. at 2707 (quoting Meyer v. Nebraska, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923)), by subjecting him to a "badge of infamy," and thus give rise to a liberty interest. Cf. Dennis v. S & S Consol. Rural High School Dist., 577 F.2d 338, 339 (5th Cir.1978) (holding that "a non-tenured public school teacher with no property interest in the renewal of his teaching contract is entitled to Fourteenth Amendment due process when the school board subjects him to a badge of infamy in the course of refusing to renew his contract.").
 In this case we are not faced with a prolonged suspension or with an allegation of bad-faith conduct on the part of the Board. Thus, we need not decide whether either a property or a liberty interest could be implicated in such a case. We note only that our holding today does not give employers a license to subvert due process requirements by suspending employees, even though they are willing to pay those employees during suspension.