**Julieann RICO, Plaintiff,**

v.

**SCHOOL BOARD OF MIAMI–DADE COUNTY PUBLIC SCHOOLS,**
Defendant.

**Case No. 09–22281–Civ.**

United States District Court,
S.D. Florida.

June 29, 2010.

John Scarola, Searcy Denney Scarola Barnhart & Shipley, West Palm Beach, FL, Tod N. Aronovitz, Leslie Elijah Stiers, Aronovitz Law, Miami, FL, for Plaintiff.

Gerald Edward Greenberg, Robert T. Kofman, Stearns Weaver Miller Weissler Alhadeff & Sitterson, Miami, FL, for Defendant.

### ORDER ON MOTIONS FOR SUMMARY JUDGMENT AND TO REMAND

URSULA UNGARO, District Judge.

THIS CAUSE is before this Court upon Defendant's Motion for Summary Judgment (D.E. 47) and Plaintiff's Partial Motion for Summary Judgment (D.E. 50), both filed on May 7, 2010. Both parties filed Responses on June 1, 2010. (D.E. 69

& 72.) And both parties filed Replies on June 18, 2010. (D.E. 89 & 93.)

THE COURT has reviewed the Motions and the pertinent portions of the record and is otherwise fully advised in the premises.

## I

Plaintiff Julieann Rico claims her former employer, Defendant School Board of Miami–Dade County Public Schools (the "School Board") wrongfully terminated her employment. Accordingly, on July 6, 2009, Rico filed a four-count Complaint against the School Board and School Board member Marta Perez in the Circuit Court of the Eleventh Judicial Circuit in and for Miami–Dade County Florida. (D.E. 1.) In the Complaint, Rico alleges: breach of contract (Count I); defamation (Count II); abuse of process (Count III); and, violation of her civil rights by denying her due process pursuant to 42 U.S.C. § 1983 (Count IV).

The School Board removed the action to this Court on August 3, 2009 pursuant to 28 U.S.C. §§ 1441 and 1446, invoking federal question jurisdiction under 28 U.S.C. § 1331. (D.E. 1.) The School Board filed its Answer and Affirmative Defenses on August 10, 2009. (D.E. 5.) On September 18, 2009, this Court dismissed Marta Perez from the lawsuit. (D.E. 11.) Thereafter, the parties filed the instant Motions for Summary Judgment.

In its Motion for Summary Judgment, the School Board argues that it is entitled to summary judgment as to the breach of contract, abuse of process, and § 1983 due process claim. Specifically with respect to the § 1983 due process claim, the School Board argues that Rico had no property interest in her continued employment because her employment contract was terminable at will and that, in any event, the School Board provided constitutionally adequate process prior to her termination. In her Partial Motion for Summary Judgment, Rico argues that she is entitled to summary judgment as to the § 1983 due process claim.

## II

The following facts are undisputed. On August 31, 2005, the School Board selected Rico as its next School Board Attorney.[1] (D.E. 48–5, pp. 38–39; 48–2; 74–10.) After her selection, School Board member Frank Bolaños negotiated the terms of the Employment Agreement between the School Board and Rico. (D.E. 48–5, 17:6–25:25, 29:1–12; 74–10.) On September 28, 2005, the School Board approved Rico's Employment Agreement at a special School Board meeting. (D.E. 54, 57:10–64:22; 74–10.) The same day, Rico and the School Board entered into the Employment Agreement. (Compl. ¶ 6; Ans. ¶ 6; D.E. 48–8, 74–1 & 74–5.)

The Employment Agreement contemplated a term of employment "commencing November 14, 2005, and ending November 13, 2009, unless sooner terminated as provided herein." (Compl. ¶ 6; Ans. ¶ 6; D.E. 48–8 & 74–5.) With respect to termination, the Employment Agreement stated the following:

V. *Termination.*

A. *Termination for Cause.* The ATTORNEY may be removed from office after public notice of the action at any time by a majority vote of the Board as a whole, for cause, in accordance with the provisions set forth hereinafter. The term "for cause" shall be deemed to include:

Misconduct in office, incompetency, gross insubordination, willful neglect of duty, or conviction of a crime in-

---

1. This was one of only two positions that reported directly to the School Board.

volving moral turpitude, as these terms are defined by Chapter 435, Florida Statutes.

The removal process "for cause" shall require a majority vote of the Board to adopt a Notice of Termination setting forth the reasons for removal and after such adoption, to furnish a copy to the ATTORNEY. At or subsequent to the adoption of the Notice of Termination, the Board may suspend the ATTORNEY from duty with pay for a period not to exceed thirty (30) days. The ATTORNEY shall have a period of thirty days from the adoption of the Notice of Termination to submit to the Board a response in writing to any or all of the reasons set forth in the Notice of Termination. In the event the ATTORNEY provides such written response in the thirty (30) day period, than at the end of the aforesaid thirty (30) day period, the Board shall make a final determination as to termination. If the ATTORNEY does not provide a written response in the thirty (30) day period, the termination shall then be considered final without further Board consideration. In the event of termination pursuant to this paragraph, the ATTORNEY shall be paid only for salary and benefits accrued to the date of termination. . . .

B. *Termination for No Cause.* The ATTORNEY may be removed from her position at any time after public notice in the event that a majority of the Board determines that it is in the Board's best interest to terminate this Employment Agreement. In the event the Board terminates this Agreement pursuant to this subparagraph, the Board shall provide as severance payment to the AT-TORNEY, all salary and accrued benefits under this Agreement; provided, however, that the ATTORNEY shall in no event receive less than two (2) years severance pay if termination occurs within the first two (2) years of the term

of this Agreement; and if termination occurs within the months 24–36, then there shall be an equivalent of all salary and benefits for an eighteen (18) month period; and if termination occurs in months 36–48 of this Agreement, then ATTORNEY shall be due an equivalent of twelve (12) months salary and benefits.

(Compl. ¶¶ 6 & 7, Ex. 1; Ans. ¶¶ 6 & 7; D.E. 48–8 & 74–5.) Importantly, the Employment Agreement also provided for a "one-time moving expense allocation" of $15,000 relating to Rico's moving to Miami–Dade County. (D.E. 48–8.) (As discussed below, some dispute exists as to the exact language of the moving-expense provision.)

On June 16, 2008, School Board member Marta Perez questioned Rico regarding Rico's acceptance of the moving expense allocation under the Employment Agreement without having permanently moved to Miami–Dade County. (Compl. ¶ 11; Ans. ¶ 11; D.E. 48–4, 104:8–17; 48–13, pp. 18–19.) The next day, June 17, 2008, Rico sent a memorandum to the School Board in which she took issue with the "clear implication . . . that [she had] improperly accepted benefits from the district." (D.E. 48–15.) Rico explained that her actions were in compliance with the terms of the Employment Agreement. (D.E. 48–15.) Rico also requested that an auditor review the agreement and her acceptance of the allocation. (D.E. 48–15.)

On or around June 26, 2008, the Miami–Dade County Office of the Inspector General (the "OIG") commenced an inquiry into the matter. (D.E. 48–12, 15:20–16:14.) The OIG's investigation included a number of meetings with Rico wherein she was interviewed "about the circumstances of the hiring and negotiations of the contract and what [she] did and the moving that [she] did to Miami during the summers,

the costs." (D.E. 48–4, 65:12–21.) During these meetings Rico provided the OIG with numerous documents. (D.E. 48–12, 26:7–28:9; 48–17.) On July 10, 2008, the OIG provided a draft report of its findings to Rico (the "Draft Report"), which concluded, among other things, that: (i) Rico never moved to Miami–Dade County, but continued to reside in Palm Beach County; (ii) Rico accepted the $15,000 allocation (less taxes) on January 17, 2006; and, (iii) Rico and then School Board member Frank Bolaños made material handwritten changes to the Employment Agreement relating to the moving expense allocation which were not approved by the School Board.[2] (D.E. 48–16.) The draft report invited, but did not require, a response from Rico. (D.E. 48–16.) Rico eventually did respond in writing to the OIG, but not before the School Board held a meeting on the matter.

Before Rico responded to the Draft Report, the School Board published its agenda for the July 15, 2008 meeting, which included the following items:

H–1 REPAYMENT OF MOVING EXPENSE ALLOCATION

ACTION PROPOSED BY DR. MARTA PEREZ: That the School Board of Miami–Dade County, Florida:

1. direct the School Board Attorney to repay the money she received as a moving expense allocation; and

2. take appropriate action against the School Board Attorney for improperly taking the moving expense allocation.

\* \* \*

H–18 ADMINISTRATIVE LEAVE FOR SCHOOL BOARD ATTORNEY JULIE ANN RICO

ACTION PROPOSED BY MR. RENIER DIAZ DE LA PORTILLA: That The School Board of Miami–Dade County, Florida direct Julie Ann Rico to be placed on Administrative Leave until the investigation by the Inspector General's Office is completed, and recommended action is proposed to the School Board of Miami–Dade County, Florida.[3]

(D.E. 48–19; 48–21; 48–23.) On the morning of July 15, 2008, prior to the School Board meeting, Rico delivered a memorandum to the School Board chairman and attached a check in the amount of the moving expense allocation previously paid to her by the School Board. (D.E. 48–24.) The memorandum stated, in pertinent part:

> Contrary to the accusations in agenda items H–1 and H–18 scheduled for today's Board meeting, I believe that I have substantially complied with the terms of my contract providing for a moving expense allocation.... Even though I did everything reasonably possible to fulfill the contractual provision and actually expended amounts equaling or exceeding the allocation, I have decided to refund the allocation.... In light of this refund, the Board should deem that District had been made whole and that no further action is necessary regarding agenda items H–1 and H–18.

(D.E. 48–24.)

At the meeting, the School Board nonetheless addressed agenda items H–1 and

---

**2.** The handwritten changes to the provision were as follows:

> The ATTORNEY shall be provided a one-time moving expense allocation in an amount ~~not to exceed~~ *of* $15,000.00 should the ATTORNEY decide to move to Miami–Dade County within the first year of the term of this Agreement:*, payable on Jan. 15, 2005.*

(48–8.)

**3.** Agendas for School Board meetings are published at least seven days prior to the meeting. (D.E. 48–23.) And Rico does not dispute that any of the relevant agendas were not published within the prescribed time.

H–18. (D.E. 48–20 & 48–21.) After inviting and hearing comment by Rico and members of the public,[4] reviewing Rico's memorandum to the chairman in which she agreed to refund the allocation, and debating the issue, the School Board, by a vote of five to four, approved agenda item H–18 with an amendment, placing Rico on administrative leave with pay until completion of the OIG investigation and receipt of its recommendation. (D.E. 48–4; 48–20; 48–21, 39.)

On July 28, 2010, after her suspension, Rico responded to the Draft Report in a nine-page letter. (D.E. 48–17.) And the next day, on July 29, 2010, the OIG submitted its final report (the "Final Report"). (D.E. 48–25.) Rico's response was included as Appendix A to the Final Report, but the conclusions were the same as those of the Draft Report. (D.E. 48–25.) In the Final Report, the OIG recommended that Rico be required to return the allocation and noted that she had already done so. (D.E. 48–25.)

Subsequent to the Final Report, the School Board published its agenda for its August 4, 2008 meeting, which included the following items:

H–5  RETAINING SPECIAL COUNSEL TO ASSIST THE BOARD REGARDING THE SCHOOL BOARD ATTORNEY AND THE SUPERINTENDENT (revised 4)
ACTION PROPOSED BY VICE CHAIR PERLA TABARES HANTMAN: That The School Board of Miami–Dade County, Florida:
1.  retain Special Counsel to assist the Board regarding the School Board Attorney's Office determining the direction it should be taking at the outcome of the Inspector General's investigation of the School Board Attorney and to review

the legal and contractual compliance issues regarding the Superintendent's contract; and
2.  extend the administrative leave of the School Board Attorney, with pay, until the time the Board determines to take further action.
3.  should the Board Attorney voluntarily resign, the Board will not pursue any further action. Upon her voluntary resignation, both parties agree to sign a mutual general release.

(D.E. 48–19; 48–26.) By a unanimous vote as to the first recommendation and a vote of six to three as to the remaining two, the School Board passed all three recommendations at the August 4, 2008 meeting. (D.E. 48–27.)

In a special October 10, 2008 meeting, the School Board authorized special counsel to represent the School Board at a mediation regarding the termination of the Employment Agreement with Rico. (D.E. 48–29.) The School Board authorized special counsel to offer six months salary, plus or minus two months, to Rico at mediation. (D.E. 48–29.) The parties mediated their dispute before the former Chief Judge of this District, Edward Davis. (D.E. 48–2, 157–160.)

Thereafter, the School Board published its agenda for its November 18, 2008 meeting, which included the following items:

H–2  RECEIVE REPORT OF MEDIATION AND RECOMMENDATION FROM THE SPECIAL COUNSEL ON THE SCHOOL BOARD ATTORNEY'S CONTRACT (good cause)
ACTION PROPOSED BY MR. AGUSTIN J. BARRERA, CHAIR: That the School Board of Miami–Dade County, Florida receive Special Counsel's opinion

---

**4.**  Any member of the public may speak at a School Board meeting in accordance with

School Board rules. (D.E. 48–23.)

and consider his recommended resolution and proposed mediated agreement with respect to the School Board Attorney's contract, and to take action thereon as deemed appropriate by the Board. (D.E. 48–30.) At the meeting, special counsel recommended to the School Board that it accept the settlement proposed by the mediator which went beyond that which the School Board had previously authorized. (D.E. 48–31 & 48–32.) In addition, special counsel listed the alternative actions, including terminating Rico for cause. (D.E. 48–31 & 48–32.) After debate, the School Board voted to terminate Rico for cause and to provide Rico with written notice of the same pursuant to the Employment Agreement. (D.E. 48–31 & 48–32.) Neither Rico nor her counsel attended the meeting. (D.E. 48–31 & 48–32.)

On November 18, 2008 the School Board provided Rico with a letter notifying her of its intent to terminate her for alleged misconduct (the "Notice Letter"). (Compl. ¶ 22; Ans. ¶ 22; D.E. 48–34.) The Notice Letter stated:

Pursuant to Section 5A of the Employment Agreement dated September 28, 2005, between this Board and Julianne Rico, the Board dismisses, you, Ms. Rico as the Board's attorney and terminated your contract "for cause". The reason for removal is misconduct in office, Specifically [sic] (i) your altering Section 3 E2 of the contract after the contract was approved by the Board and (ii) your accepting $15,000 moving expense allocation without moving to Miami–Dade County and not returning that money until 2½ years and only after it became public knowledge that you had accepted that moving expenses monies.

Pursuant to the subject contract, you have 30 days to submit a written response to the reason for termination set forth above, and if you do, the Board

will then make a final determination as to termination. If you do not respond in writing, the termination shall be considered final without further Board consideration.

(D.E. 48–34.)

On December 15, 2008, Rico submitted a letter in response (the "Response Letter"). (D.E. 48–3.) The six-page Response Letter set forth Rico's response to the allegations against her and stated: "I am hopeful that the board will not approve its intended action to terminate me for cause, but instead reconsider and approve the settlement recommendation made by your Special Counsel ... at the November 18, 2008 Board Meeting."

After receiving Rico's Response Letter, the School Board publicized the following item on its agenda for its January 14, 2009 meeting:

H–2 FINAL DETERMINATION ON SCHOOL BOARD ATTORNEY'S CONTRACT AND RECOMMENDED RENEWAL OF SPECIAL COUNSEL ACTION PROPOSED BY DR. SOLOMON C. STINSON, CHAIR: That The School Board of Miami–Dade County, Florida: 1) as it deems appropriate, make a final determination as to the School Board Attorney's contract. . . .

(D.E. 48–23 & 48–36.) At the January 14, 2009 meeting, Rico's attorney responded to the Notice of Termination on her behalf. (D.E. 48–37 & 48–38.) Despite the Response Letter and the argument of Rico's attorney, the School Board voted five to four to terminate Rico for cause. (D.E. 48–37 & 48–38.) Thereafter, on January 20, 2009, the School Board sent Rico a letter informing her of its final decision to terminate her employment (the "Termination Letter"). The Termination Letter stated:

As the minutes of the January 14, 2009 Miami–Dade County School Board meet-

ing will reflect, the Board gave full consideration to your letter of December 15, 2008 and heard argument of counsel on your behalf. At the conclusion of the discussion on the item, the Board, in accordance with the provisions of Section 5A of the Employment Agreement dated September 28, 2005, between this Board and yourself, made a final determination to terminate the subject contract for cause.

(D.E. 48–40.)

Although the parties do not dispute that Rico was terminated after December 15, 2008, when she sent the Response Letter, the parties dispute exactly when Rico was terminated. Rico alleges that she was terminated on December 17, 2008 and submits a School Board "Employment Summary" which states Rico's "Job Termination Date" as December 18, 2008. (Compl. ¶ 58; D.E. 75.) The School Board contends that Rico was terminated at the January 14, 2009 meeting after Rico's attorney addressed the School Board. (D.E. 48–37 & 48–38.) In support of this contention, the School Board submits the minutes and transcript of the January 14, 2009 meeting. (D.E. 48–37 & 48–38.)

### III

Summary judgment is authorized under Federal Rule of Civil Procedure ("Rule") 56 only when the moving party meets its burden of demonstrating that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." When determining whether the moving party has met this burden, the court must view the evidence and all factual inferences in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Rojas v. Florida,* 285 F.3d 1339, 1341–42 (11th Cir.2002).

■ The party opposing the motion may not simply rest upon mere allegations or denials of the pleadings; after the moving party has met its burden of proving that no genuine issue of material fact exists, the non-moving party must make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Poole v. Country Club of Columbus, Inc.,* 129 F.3d 551, 553 (11th Cir.1997); *Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989). If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial. *Envtl. Def. Fund v. Marsh,* 651 F.2d 983, 991 (5th Cir.1981).[5] Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. *Lighting Fixture & Elec. Supply Co. v. Cont'l Ins. Co.,* 420 F.2d 1211, 1213 (5th Cir.1969). If reasonable minds might differ on the inferences arising from undisputed facts then the court should deny summary judgment. *Impossible Elec. Techniques, Inc. v. Wackenhut Protective Sys., Inc.,* 669 F.2d 1026, 1031 (5th Cir. 1982); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("[T]he dispute about a material fact is 'genuine,' ... if the evidence is such that a reasonable jury could

**5.** Decisions of the United States Court of Appeals for the Fifth Circuit entered before October 1, 1981, are binding precedent in the Eleventh Circuit. *See Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981).

return a verdict for the nonmoving party.").

Moreover, the party opposing a motion for summary judgment need not respond to it with evidence unless and until the movant has properly supported the motion with sufficient evidence. *Adickes*, 398 U.S. at 160, 90 S.Ct. 1598. The moving party must demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or otherwise are not in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever. *Brunswick Corp. v. Vineberg*, 370 F.2d 605, 611–12 (5th Cir.1967). The Court must resolve all ambiguities and draw all justifiable inferences in favor of the non-moving party. *Liberty Lobby, Inc.*, 477 U.S. at 255, 106 S.Ct. 2505.

## IV

The Court begins with a combined discussion of both Motions as they relate to Rico's § 1983 due process claim. Because the Court holds that the School Board is entitled to summary judgment as to that claim and Rico is not, the Court does not address the remaining state-law claims, but instead discusses its decision to remand these claims back to Florida's Eleventh Judicial Circuit Court.

## A

Rico claims the School Board failed to provide her with adequate process in terminating her "vested property right in her employment with the School Board" and seeks relief pursuant to § 1983. "In this circuit, a § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Arrington v. Helms*, 438 F.3d 1336, 1347 (11th Cir.2006) (citations omitted). The

School Board argues it is entitled to summary judgment as to this claim because the undisputed evidence demonstrates the first and last elements are lacking. Rico argues she is entitled to summary judgment on this claim because the undisputed evidence demonstrates all three elements are satisfied.

The Court agrees with the School Board that the undisputed evidence demonstrates that the first element is lacking because Rico did not have a property interest in her continued employment with the School Board. Thus, the School Board and not Rico is entitled to summary judgment as to Rico's § 1983 due process claim, which is premised solely upon Rico's right to continued employment with the School Board. The Court further holds that even if Rico did have a property interest in her continued employment, the result would be the same because the undisputed evidence demonstrates the School Board provided her with constitutionally adequate process.

### 1

Rico claims she had a constitutionally-protected property interest in her continued employment with the School Board. Such "[p]roperty interests stem not from the Constitution, but from sources such as statutes, regulations, ordinances, and contracts." *Id.* (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 576–77, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). "Whether these sources create a property interest must be decided by reference to state law." *Id.* (citing same). And "under Florida law, an employee does not have a property interest in his or her employment unless a contract or state or local law provides something more than an 'at-will' relationship." *McMahon v. City of Edgewater*, 60 F.Supp.2d 1281, 1284 (M.D.Fla.1999); *see also Finch v. City of Vernon*, 877 F.2d 1497, 1506 (11th Cir. 1989); *Irwin v. Miami–Dade County Pub.*

*Schs.*, 2009 WL 497648, *8 (S.D.Fla. Feb. 25, 2009).

■ Under the undisputed terms of the Employment Agreement, Rico's employment was terminable at will. The relevant language of the Employment Agreement is unambiguous; section V.B, "Termination for No Cause," allowed the School Board to terminate Rico's employment at "any time." Thus, Rico's relationship with the School Board was "at will." *See id.; McGregor v. Bd. of Comm'rs of Palm Beach County,* 674 F.Supp. 858, 860 (S.D.Fla.1987). And therefore, Rico did not have a property interest in her continued employment. Despite the clear terms of the Employment Agreement, Rico repeatedly refers to herself in her opposition memorandum as "tenured," but mere repetition cannot convert an established fact into a disputed issue, and her legal arguments regarding the interpretation of the Employment Agreement are unavailing.

■ First, Rico argues the Employment Agreement's provision for severance pay in the event of a termination without cause changes the "at will" nature of the relationship. But under Florida law, the inclusion of a severance pay provision does not elevate an otherwise "at will" employment relationship to something more.[6] *See, e.g., McMahon,* 60 F.Supp.2d at 1284; *McGregor,* 674 F.Supp. at 860; *c.f. J.R.D. Mgmt. Corp. v. Dulin,* 883 So.2d 314, 317 (Fla. 4th DCA 2004).

Second, Rico argues that the "Termination with No Cause" provision is irrelevant because the School Board terminated her pursuant to the "Termination for Cause" provision. However, it is the "Termination for No Cause" provision that renders the employment terminable at will and negates any property interest in continued employment, *i.e.,* the Employment Agreement provided no property interest in continued employment ab initio. *See, e.g., Inst. for Cmty. Design Analysis, Inc. v. City of Hollywood,* 1992 WL 220001, *9 (S.D.Fla. Aug. 21, 1992). That the School Board terminated Rico for cause cannot create a property interest where such an interest does not otherwise exist.

Third, Rico argues she was a "tenured attorney with over 25 years of legal experience." Rico, however, cites no law which would have required that the School Board have cause to terminate her notwithstanding the Employment Agreement.[7] *See Santillana v. Fl. St. Court Sys.,* 2010 WL 271433, *9 (M.D.Fla. Jan. 15, 2010) (noting a public employee has tenure where Florida law provides that she may only be discharged for cause (citations omitted)). Rico also notes that Florida Statute Chapter 435 is referenced in the "Termination for Cause" provision of the Employment Agreement. However, Chapter 435 prescribes the screening requirements for state employment and appears to be completely irrelevant to the issue of whether

---

6. Additionally, although Rico does not argue as much, the Court notes that the requirement of public notice in the "Termination for No Cause" provision does not alter the at-will nature of Rico's employment. *See, e.g., McMahon,* 60 F.Supp.2d at 1284 (holding employment was terminable at will where city council could terminate the employee at "any time" by a majority vote, notwithstanding employee's right to request a public hearing); *McGregor,* 674 F.Supp. at 860 (holding employment was terminable at will where county commission could terminate the employee

at any time upon the adoption of a resolution for employee's removal).

7. Rico cites to *Hardiman v. Jefferson County Board of Education,* 709 F.2d 635, 636 n. 1 (11th Cir.1983), as support for her contention that Plaintiff had an undeniable property interest in her continued employment as a tenured attorney. However, in *Hardiman,* the plaintiff/teacher's status as "tenured" was stipulated by the parties. *See id.* Therefore, the decision sheds no light on Rico's status.

Rico was an at-will employee. In any event, the incorporation of statutory definitions into the "Termination for Cause" provision does not affect the "Termination for No Cause" provision nor otherwise create a constitutionally-protected property interest. Rico also submits portions of the Manual for Procedures for Exempt Personal, which she argues was adopted by the School Board. (D.E. 74–27.) However, she submits nothing to show that the School Board was bound by the manual or that the manual applied to Rico's employment notwithstanding the Employment Agreement. Further, nothing in the submitted portions of the manual requires cause to terminate an employee.

■■■ Finally, and perhaps most importantly, Florida law actually provides that the attorney-client relationship is immutably terminable at will even where a public entity is the client. *See Osman v. Hialeah Hous. Auth.,* 785 F.2d 1550, 1550–51 (11th Cir.1986) (holding relationship between an attorney and municipal entity was terminable at will regardless of an employment contract because, under Florida law, "[t]he right to discharge one's counsel is absolute and is not modified by a written agreement." (citations omitted)).

In summary, based upon the undisputed language of the Employment Agreement, specifically the "Termination for No Cause" provision, and nature of Rico's employment, Rico had no property interest in her continued employment with the School Board. Accordingly, neither the School Board's suspension nor termination of Rico's employment can support a claim under § 1983 for violation of due process, and the School Board, not Rico, is entitled to summary judgment as to this claim.

2

■■■ Further, even assuming Rico had a property interest in her employment, the School Board afforded Rico constitutionally adequate process with respect to her termination and, assuming it was a deprivation, her suspension with pay. A person's property interest "may be abridged as long as the procedures used to abrogate that right satisfy constitutional minima." *See McKinney v. Pate,* 20 F.3d 1550, 1561 (11th Cir.1994). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Reams v. Irvin,* 561 F.3d 1258, 1263 (11th Cir.2009) (quoting *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)). "Due process entitles an individual to notice and some form of hearing before state action may finally deprive him or her of a property interest." *Cryder v. Oxendine,* 24 F.3d 175, 177 (11th Cir.1994).

■■■ The School Board afforded Rico adequate process prior to her termination. There is no genuine dispute that Rico and the School Board publicly debated her alleged misconduct and the School Board's response back and forth over a period of months beginning in July 2008. Moreover, it is undisputed that the School Board did not finally terminate Rico's employment until after it provided specific written notice of its intent to terminate her for cause on November 18, 2008 and Rico responded in writing on December 15, 2008.[8] Based on these undisputed facts, the School Board afforded Rico constitutionally adequate process. *See, e.g., Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 546, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) ("The

8. To be sure, Rico alleges she was terminated on December 17, 2008, and the School Board contends she was terminated on January 14, 2009. But the dispute is immaterial because either way Rico's employment was terminated *after* she received notice (the November 18, 2008 letter from the School Board) and provided a response (her December 15, 2008 letter to the School Board).

tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story."); *Sherrod v. School Bd. of Palm Beach County,* 703 F.Supp.2d. 1279, 1291–92 (S.D.Fla.2010) (citations omitted).

Rico's arguments to the contrary are unavailing. First, whether the School Board's actions complied with the specific process prescribed in the Employment Agreement is immaterial to the due process analysis. *C.f. Sherrod,* 703 F.Supp.2d. at 1291–92 (citing *Riggins v. Goodman,* 572 F.3d 1101, 1109 n. 3 (10th Cir.2009)).

Second, Rico's argument that the School Board's process and actions "were nothing more than a hollow and ineffectual figurative act" does not support a due process claim because Florida courts have the power to remedy such violations and "the presence of a satisfactory state remedy mandates that [this Court] find that no procedural due process violation occurred," regardless of whether Rico pursued that remedy.[9] *See McKinney,* 20 F.3d at 1563–64 ("[E]ven if McKinney suffered a deprivation at the hands of a biased Board at his termination hearing, he has not suffered a *violation* of his procedural due process rights unless and until the State of Florida refuses to make available a means to remedy the deprivation."); *Flint Elec. M'ship Corp. v. Whitworth,* 68 F.3d 1309, 1312–14 (11th Cir.1995).

Third, Rico's argument that she had no knowledge of the evidence against her is unsupported. Rico testified that prior to her termination she received both the draft and final OIG investigation reports regarding her alleged misconduct and also that she cooperated with the investigation.

Fourth, assuming Rico was terminated in December, Rico was afforded a meaningful post-termination review at the next School Board meeting on January 14, 2009. At that publicly noticed meeting, Rico's counsel appeared on behalf of Rico to respond to the allegations against Rico and the School Board voted to finalize the termination. *See Loudermill,* 470 U.S. at 546, 105 S.Ct. 1487. And any argument regarding the "hollowness" of that hearing fails under *McKinney.*

■ Finally, the Court has considered whether Rico's suspension with pay amounted to a deprivation of a property interest.[10] With respect to this issue, the evidence is undisputed that the School Board did not suspend Rico until: after the OIG initiated an investigation of her conduct, in which she participated, and provided her with a draft report of its findings; after the School Board published its intent to place her on administrative leave pending the OIG investigation as an item on its agenda for July 15, 2008 meeting; and, after Rico responded in a memorandum and in person at the meeting. Thus, based on these undisputed facts, the

---

**9.** "Florida courts have adapted the common law writ of certiorari for use in various scenarios, including . . . to review actions of local government agencies." *Broward County v. G.B.V. Intern., Ltd.,* 787 So.2d 838, 843 (Fla.2001); *City of St. Petersburg v. Meaton,* 987 So.2d 755 (Fla. 2d DCA 2008). Therefore, Rico could have sought certiorari review in a Florida circuit court.

**10.** The suspension with pay, however, was not a deprivation of a property interest. *See Ed-*

*wards v. California Univ. of Pennsylvania,* 156 F.3d 488, 492 (3d Cir.1998). And the cases Rico cites to the contrary are inapposite. *See Hardiman,* 709 F.2d at 637–38 (not reaching issue of whether suspension with pay amounts to such a deprivation because the suspension at issue was *de minimis* ); *Dennis v. S & S Consolidated Rural High Sch. Dist.,* 577 F.2d 338, 341 (5th Cir.1978) (holding failure to renew contract combined with public accusation of alcoholism amounted to a deprivation of a property interest).

School Board afforded Rico constitutionally adequate process prior to her suspension with pay. *See, e.g., Loudermill,* 470 U.S. at 546, 105 S.Ct. 1487.

Accordingly, even assuming Rico had a constitutionally-protected property interest in her continued employment, the School Board, and not Rico, is entitled to summary judgment because the School Board provided Rico with constitutionally adequate process.

## B

 Having determined that the School Board and not Rico is entitled to summary judgment as to Count IV, the Court will remand the remaining state-law claims to the Eleventh Judicial Circuit Court in and for Miami–Dade County. Absent diversity or some other independent basis for subject matter jurisdiction, a district court may, in its discretion, remand previously removed state-law claims if no federal-question claims remain pending. *See* 28 U.S.C. § 1367(c); *Carlsbad Tech., Inc. v. HIF Bio, Inc.,* — U.S. —, 129 S.Ct. 1862, 1865, 173 L.Ed.2d 843 (2009); *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); *Murphy v. Fla. Keys. Elec. Co-op. Ass'n, Inc.,* 329 F.3d 1311 (2003). Given that the remaining state law claims involve matters of a unique concern to the citizens and State of Florida (*i.e.,* the relationship of the School Board and its attorney, a public official), the Court, in its discretion, declines to exercise jurisdiction over these claims and will remand the same for further proceedings. Accordingly, it is

ORDERED AND ADJUDGED that the School Board's Motion for Summary Judgment (D.E. 47) is GRANTED IN PART. The School Board is entitled to summary judgment as to Rico's due process claims (Count IV). This Court does not reach the remainder of the School Board's Motion. It is further

ORDERED AND ADJUDGED that Rico's Motion for Summary Judgment is DENIED. It is further

ORDERED AND ADJUDGED that the remainder of this cause is REMANDED to the Eleventh Judicial Circuit in and for Miami–Dade County, Florida. It is further

ORDERED AND ADJUDGED that the Clerk of Court SHALL administratively close this case.